467-13/JJW
**FREEHILL HOGAN & MAHAR, LLP**
*Attorneys for Plaintiff*
BOUCHARD TRANSPORTATION CO., INC.
80 Pine Street
New York, NY 10005
212.425.1900 (p)
212.425.1901 (f)
John J. Walsh
Michael D. Tucker

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BOUCHARD TRANSPORTATION CO., INC., <br><br>                         Plaintiff, <br><br>   -against- <br><br> VIDEOTEL MARINE INTERNATIONAL LIMITED, <br><br>                       Defendant. | 13 Civ. 09116 (PKC) <br><br> **COMPLAINT** |

Plaintiff, BOUCHARD TRANSPORTATION CO., INC. ("BOUCHARD"), by its attorneys, Freehill Hogan & Mahar, LLP, as and for its Complaint against Defendant VIDEOTEL MARINE INTERNATIONAL LIMITED ("VIDEOTEL"), alleges upon information and belief as follows:

## JURISDICTION AND VENUE

1.     This action constitutes an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and is within the admiralty and maritime jurisdiction of this Court pursuant to 28 U.S.C. 1333.

2.     This Court also has jurisdiction over the matter pursuant to its diversity jurisdiction, the citizenship of the parties, and the amount in controversy exceeding $75,000.00 under 28 U.S.C. §1332. Plaintiff BOUCHARD is a citizen of New York, Defendant

410473.2

VIDEOTEL is a citizen of the U.K., and the contracts between the parties giving rise to the claims in this case exceed $75,000.00 in value.

3.      This is an action for Declaratory Judgment filed under and pursuant to 28 U.S.C. §§ 2201-02 *et seq.* ("The Federal Declaratory Judgment Act") for the purposes of determining an actual controversy of a justifiable nature as more fully appears hereafter.

4.      Venue is proper by virtue of one or more of the parties executing the contracts at issue in New York.

5.      Venue is further proper by virtue of VIDEOTEL's presence in New York through its agents and representatives.[1]

6.      Venue is further proper by virtue of the fact that the maritime contracts giving rise to this action concern goods and/or services rendered to one or more of BOUCHARD's vessels operating in and around Long Island Sound, the Port of New York and New Jersey, the Waters of New York, and the Waters of the United States.

**THE PARTIES**

7.      Plaintiff BOUCHARD is a domestic corporation organized and existing under the laws of New York, with its principal place of business located at 58 South Service Road, Suite 150, Melville, New York 11747. BOUCHARD is a total service oil barging company that transports oil cargo by water for hire.

---

[1] Dick Halluska and Connie LaRocca are listed as representatives of Videotel in the U.S. with an address and place of business at ISM Solutions Inc. c/o B&P International – Marine Division, Arthur J. Gallagher & Co. of New York, Inc., 200 Broadhollow Road, Suite 310, Melville, New York 11747. Ph: 631.465.8865.
See http://videotel.com/about_videotel/international_representatives/ and click the "More" tab below Dick Halluska & Connie LaRocca.

410473.2

8.    Defendant VIDEOTEL is a corporation organized and existing pursuant to the laws of the United Kingdom, with its principal place of business located at 84 Newman Street, London, W1T 3EU, United Kingdom.    VIDEOTEL maintains an agent in New York. VIDEOTEL produces and provides training materials for vessels, including oil, gas, and chemical tankers.

## THE VIDEOTEL CONTRACTS

### A.  VIDEOTEL ON DEMAND CONTRACT

9.    On or about May 6, 2013, BOUCHARD and VIDEOTEL (collectively the "Parties") entered into an Agreement for Videotel on Demand ("VOD Contract"). (**EXHIBIT A.**)

10.    The VOD Contract was signed by VIDEOTEL's CEO, Nigel D. Cleave on May 6, 2013 followed by BOUCHARD's Executive VP, Michael Brady on May 15, 2013.

11.    The VOD Contract provided, *inter alia*, that in consideration for payment by BOUCHARD, VIDEOTEL would provide computers and training materials onboard twenty of BOUCHARD's vessels and in two of BOUCHARD's offices located in Melville and Staten Island, respectively ("the VOD system"). See Ex. A at Annex to Schedule 5.

12.    The VOD system provided by VIDEOTEL was defective insofar as it was totally incompatible with BOUCHARD's vessels and offices and was therefore totally and completely unsuitable and unusable by BOUCHARD.

13.    After discovering the VOD system was unusable by its vessels and offices, BOUCHARD contacted VIDEOTEL's client representative, John Evans, to cure the defects in the VOD system.

3

14.   VIDEOTEL ignored BOUCHARD's request for assistance to make the VOD system compatible with BOUCHARD's vessels and offices.

15.   Following VIDEOTEL's refusal to cure the defects and/or compatibility problems the VOD remained completely unusable, and BOUCHARD returned the VOD system to VIDEOTEL.

16.   VIDEOTEL failed to perform under the VOD contract, failed to deliver a working product to BOUCHARD, and refused to take action to cure defects in the equipment provided.

### B.  WEB-BASED FLEET TRAINING ADMINISTRATOR CONTRACT

17.   On or about May 6, 2013, BOUCHARD and VIDEOTEL (collectively the "Parties") entered into the Videotel webFTA Agreement ("webFTA Contract"). **(EXHIBIT B.)**

18.   The webFTA Contract signed by VIDEOTEL's CEO, Nigel D. Cleave on May 6, 2013, and by BOUCHARD's Executive VP, Michael Brady on May 15, 2013.

19.   The webFTA Contract provided that in consideration for payment by BOUCHARD, VIDEOTEL would provide access to BOUCHARD's training records stored on computer server equipment operated by VIDEOTEL, that VIDEOTEL would import BOUCHARD crew details concerning training, and that VIDEOTEL would prepare and manage training schedules.

20.   The webFTA Contract states that the services provided for in the contract are dependent upon the installation of the VOD system onboard BOUCHARD's vessels and offices. See Ex. B. at Page 1 of 7, subsection "The Services:"

21.   The VOD system was never made functional by VIDEOTEL, the crew of the Bouchard vessels and office staff were unable to complete training by use of the VIDEOTEL

4

system, and therefore the webFTA system was not implemented under the separate contract and BOUCHARD never received any of the benefits of the webFTA Contract.  Because VIDEOTEL ignored BOUCHARD's request to cure the defect in the VOD system, it was impossible for BOUCHARD to utilize the webFTA Contract services.

22.   VIDEOTEL failed to perform its obligations under the webFTA Contract, giving rise to further claims by BOUCHARD.

## AS AND FOR A FIRST CAUSE OF ACTION:
## DECLARATORY JUDGMENT FOR BREACH OF
## IMPLIED WARRANTY FOR FITNESS FOR A PARTICULAR
## PURPOSE AND/OR WARRANTY OF MERCHANTABILITY

23.   Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 22 hereof with the same force and effect as though the same were set forth herein in full and at length.

24.   Contracts of this type at issue contain an implied warranty for fitness for a particular purpose and/or warranty of merchantability which requires that the goods sold are suitable for use in a particular manner. In order to confer a warranty of fitness for a particular purpose the seller must be aware of the buyer's particular purpose and the buyer must be relying on using the goods in this particular manner.

25.   VIDEOTEL was aware of BOUCHARD's need for a computer system to provide onboard training of the vessels' crew and the ability to track the training at the time of contracting.

26.     VIDEOTEL, as the seller of the VOD system, was in the best position to select or furnish suitable and compatible goods to BOUCHARD to meet the terms of the contract.  All equipment and software was selected by VIDEOTEL.

27.     VIDEOTEL delivered to BOUCHARD a VOD system that was not fit for the purpose for which its use was intended, and refused to correct and/or make the system suitable despite BOUCHARD's demands that repairs/alterations be made to make the system functional.

28.     VIDEOTEL breached its implied warranty that the goods were fit for their intended purpose. None of the goods delivered to BOUCHARD were capable of being used as intended under the contract, and VIDEOTEL materially breached essential terms of the contract in failing to fufill its obligations, such conducting resulted in VIDEOTEL's material breach of the contract, which warranting rescission, or cancellation, or termination of the contracts by BOUCHARD.

## AS AND FOR A SECOND CAUSE OF ACTION
## DECLARATORY JUDGMENT FOR
## BREACH OF CONTRACT FOR FAILURE TO CURE

29.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 27 hereof with the same force and effect as though the same were set forth herein in full and at length.

30.     Paragraph 6.1.2 of the VOD Contract states: "During the continuance of this Agreement [VIDEOTEL] shall . . . replace any defective [VOD system] provided that the defect necessitating such replacement shall be a result of a fault in the [VOD system] or some other default of [VIDEOTEL.]"

6

31.     VIDEOTEL's failure to repair the defective and inoperable equipment which VIDEOTEL provided to BOUCHARD is a breach of VIDEOTEL's obligations under Paragraph 6.1.2 of the VOD Contract and, since the webFTA Contract could not be fulfilled unless the VOD Contract was fulfilled, resulted in a breach of both agreements.

32.     VIDEOTEL further breached the VOD Contract, specifically Paragraph 24.1 which states: "Each of the Parties undertakes with each other to do all things reasonable within their power which are necessary or desirable to give effect to the spirit and intent of this Agreement." VIDEOTEL completely and utterly failed to take responsibility for and correct the defects in performance on the VOD contract which resulted from the provision of unusable and unsuitable equipment, thereby breaching the foregoing term of the VOD Contract.

33.     VIDEOTEL's breach of the foregoing contractual sections and its further failure to take appropriate action to cure the aforementioned defects after having been notified of the defects by BOUCHARD is a material breach of the VOD Contract and, without a properly operating VOD system, the webFTA Contract was rendered useless.

34.     VIDEOTEL, therefore, materially breached its obligation to cure the defect with the VOD system, which is a material breach warranting rescission, or cancellation, or termination of the contracts by BOUCHARD.

## AS AND FOR A THIRD CAUSE OF ACTION
## DECLARATORY JUDGMENT THAT THE CONTRACTS
## ARE NOT BINDING DUE TO LACK OF CONSIDERATION

35.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 34 hereof with the same force and effect as though the same were set forth herein in full and at length.

7

36.    A contract cannot be binding without consideration.

37.    VIDEOTEL's provision of a VOD system that was defective and incompatible with BOUCHARD's vessels is tantamount to lack of consideration. The contracts, therefore, are revocable at BOUCHARD's option for lack of consideration.

## AS AND FOR A FOURTH CAUSE OF ACTION
## DECLARATORY JUDGMENT THAT THE CONTRACTS
## ARE VOIDABLE ON THE BASIS OF NON-PERFORMANCE

38.    The contracts at issue contemplated that the equipment and services rendered by VIDEOTEL would continue for a period of four years.

39.    The equipment provided being totally unsuitable and unusable, BOUCHARD returned the equipment to VIDEOTEL, which accepted the return of the equipment.

40.    No performance was rendered, the equipment returned, and no services were or continue to be rendered to BOUCHARD under the contract. VIDEOTEL abandoned its performance and accepted the return of its equipment.

41.    The Contracts are voidable on the basis that by the conduct of the parties, neither BOUCHARD nor VIDEOTEL will continue to receive the benefit of the contracts and VIDEOTEL will not perform its the obligations there under.

**WHEREFORE**, Plaintiff Bouchard Transportation Co., Inc. demands judgment against Defendant Videotel Marine International Limited as follows:

8

(a)   Declaratory Judgment that VIDEOTEL breached its implied warranty for fitness for a particular purpose and/or warranty of merchantability, a material breach warranting rescission, or cancellation, or termination of the contracts at issue by BOUCHARD;

(b)   Declaratory Judgment that VIDEOTEL's failure to cure the defects in the VOD system, thereby also rendering the webFTA Contract without value, is a material breach of its contractual obligations warranting rescission, or cancellation, or termination of the contracts at issue by BOUCHARD;

(c)   Declaratory Judgment that VIDEOTEL's provision of the defective VOD system is tantamount to lack of consideration warranting the contracts at issue non-binding;

(d)   Declaratory Judgment that the contracts are voidable on the basis that VIDEOTEL's equipment has been returned, VIDEOTEL abandoned its performance under the contract, and no further performance will be rendered under; and

(e)   Such other, further and different relief as the Court may deem just and proper.

Dated: New York, New York
December 23, 2013

FREEHILL HOGAN & MAHAR, LLP
*Attorneys for Plaintiff*
BOUCHARD TRANSPORTATION CO., INC.

By:   _____

John J. Walsh

9

Michael D. Tucker
80 Pine Street
New York, NY  10005
212.425.1900 (p)
212.425.1901 (f)

410473.2

# EXHIBIT A

*Bouchard Transportation Co., Inc.*





# Agreement

# For

# Videotel On Demand



# BOUCHARD TRANSPORTATION CO., INC.

## MINI-VOD 50

**Date:  6th May 2013.**

*Bouchard Transportation Co., Inc.*        

# Videotel MINI-VOD 50 Agreement

**Date**          : 6th May 2013

**The Parties :**

**Videotel Marine International Limited,** 84 Newman Street, London W1T 3EU, United Kingdom (the "Company")

**Bouchard Transportation Co., Inc.,** 58 South Service Road, Suites 150, Melville, NY 11747 USA (the "Hirer")

(The Company and the Hirer may hereinafter be referred to collectively as "Parties" and individually as "Party", wherever the context so admits.)

**NOW, IT IS HEREBY AGREED as follows:**

**1.    Definitions**

In this Agreement the following expressions shall unless the context dictates otherwise have the meanings ascribed to them below:

| | |
|---|---|
| "Commencement of Hire" | means the individual date on which the VOD and Materials are delivered to or made available for collection by the Hirer or its agents in respect of each Vessel. |
| "Hire Charge" | means the charge for the rental of the Vodbox and the Materials as set out in Schedule 2. |
| "Initial Term" | means the Hire period set out in Schedule 4. |
| "VOD" | means **Videotel On Demand** and describes the overall system whereby Materials are pre-loaded onto a stand-alone computer and supplied to every ship in the fleet. These Materials are then accessible by ship's staff on demand, subject to the provisions of this Agreement. |
| "Vodbox" | means the dedicated computer, including separate keyboard, mouse, Vodstick, and a flat panel monitor with the associated equipment, provided by the Company to the Hirer and incorporating the Materials. |
| "Vodstick" | means a portable memory device intended to transfer data between the Vodbox and a printer or email station. |
| "Materials" | means the training Materials pre-loaded or programmed, where technically possible, by the Company into the Vodbox comprising: |

(a) those video, CBT, Course and COBALT titles and associated books listed in Schedule 1.

(b) the On-Board Training Manager Plus System ("OTM*plus*")

*Bouchard Transportation Co., Inc.*          

| | |
|---|---|
| "PIN" | means the confidential security number or series of numbers provided by the Company to the Hirer. |
| "Year" | means the period of 12 months from the Commencement of Hire and each subsequent consecutive period of 12 months during the period of this Agreement. |
| "Credit" | means the permission granted under this Agreement to the Hirer by the Company for a single access to any one of the Videos or the CBTs or the CBT Courses or the COBALT modules. |
| "Credit Limit" | means the number of Credits purchased by the Hirer as set out in Schedule 3 or as may be purchased pursuant to clause 5 hereof. |

**2.   Hire**

2.1   The Company hereby Hires to the Hirer the Materials upon the terms and subject to the conditions hereinafter appearing.

**3.   Commencement of Hire**

3.1   The hiring of the Materials will commence on the date of the Commencement of Hire.

3.2   The Company will endeavour to ensure that despatch of the Materials by the Company to the Hirer will be within 60 days of the date of this Agreement, unless a longer period has been requested by the Hirer. For the avoidance of doubt, time shall not be of the essence with regard to despatch and the Company shall not incur any liability whatever in the event of any delay.

3.3   The Company shall deem the Commencement of Hire to be the date 90 days after the date of this Agreement if, having been requested by the Company, no delivery instructions for the Materials have been received from the Hirer within a future 30 days period.

**4.   Charges**

4.1   The Hirer will pay to the Company in advance the Hire Charge proportionately for each six-monthly interval, or otherwise agreed in writing, as set out in Schedule 2, the first such payment to be made on the date of Commencement of Hire and subsequent payments to be made within 30 days of the receipt of an invoice.

4.2   The Hire Charge shall exclude VAT or any other applicable equivalent local tax (if any), which the Company shall add to its invoices if applicable and at the applicable rate.

4.3   The Parties agree that the Hire Charge will automatically increase by a maximum of 2% every 12 months after the first 12 months from the Commencement Date provided that the Hire Charge will not increase more than once in any 12 month period.

4.4   The Cost of despatch and return of the Vodbox and Materials to the Hirer shall be charged by the Company to the Hirer and shall be payable by the Hirer in addition to the Hire Charge.

4.5   Risk in the Vodbox and Materials shall pass to the Hirer upon receipt of the same by the Hirer or his designated agent or vessel or other such place as required by the Hirer. The Company shall arrange appropriate insurance of the Vodbox and Materials in relation to the despatch of the Vodbox and Materials, the cost of such insurance and freight shall be charged to the Hirer.

Bouchard Transportation Co., Inc.  

The Hirer shall be responsible for the safekeeping of the Materials and for the comprehensive insurance thereof throughout the term of the Agreement.

4.6 Time shall be of the essence in respect of the payment of all sums due hereunder and the Company may at its sole discretion deem that the Hirer shall have repudiated this Hire Agreement if any Hire Charge or other payments shall remain unpaid for more than 30 days after becoming due.

4.7 All payments due hereunder (if not made by Wire Transfer, Direct Debit or Banker's Order) shall be made to the Company at its address stated herein or at such other address as the Company may from time to time communicate to the Hirer. Any payments sent by post shall be so sent at the risk of the Hirer.

4.8 The Company reserves the right to charge the Hirer interest at the rate of 1.5% per month or part thereof on all overdue accounts.

4.9 All payments to be made by the Hirer hereunder shall be made net of any and all charges. Withholding tax or local taxes, if any, will be borne by the "Hirer" and no deduction will be made from the invoice amount.

4.10 Credits purchased by the Hirer shall be in addition to the Hire Charge and will be invoiced and charged separately by the Company at the cost per Credit set out in Schedule 3. For the avoidance of doubt all Credits purchased in a Year shall be useable and transferable to subsequent Years.

**5. Credits, Updates and Security**

5.1 At approximately 12 monthly intervals, the Company shall deliver to the Hirer at the address nominated in Schedule 6 a DVD or similar device for each Vodbox supplied which will update the Materials to account for any applicable revisions that may have arisen over the previous 12 months. The cost of such annual update is included in the Hire Charge. The cost of the freight and insurance will be charged to the Hirer.

5.2 As a security measure the Company will at regular six (6) monthly intervals provide the Hirer by electronic mail, to the address nominated in Schedule 6, with a security code to be typed into the Vodbox as directed by the Company. Failure by the Hirer to enter such security code correctly or at all will render the Vodbox unusable until such time as the correct code is entered.

5.3 Credits may be purchased by the Hirer. The Company will on or before the Commencement of Hire provide the Hirer with an address for the Hirer to contact the Company to purchase further credits. The Hirer must quote its PIN in order to place any order. The Company shall be entitled to treat any order so made to be valid where the correct PIN is quoted. All such orders will be invoiced separately in accordance with clause 4.4.

**6. Obligations of the Company**

6.1 During the continuance of this Agreement the Company shall:

6.1.1 provide the Vodboxes and Materials, updates of Materials, Credits, PIN numbers and security codes to the Hirer as set out herein;

Bouchard Transportation Co., Inc.  

6.1.2    replace any defective Vodbox or Materials provided that the defect necessitating such replacement shall be as a result of a fault in the Vodbox or the Materials or some other default of the Company;

6.1.3    supply such certificates and plaques as the Hirer shall reasonably require with regard to its use of the Materials; and

6.1.4    allow the Hirer the continued use of the Company's video library, supplied to the Hirer under a previous Agreement, where applicable, without charge for a period of 6 months until Vodboxes and Materials have been supplied to the nominated Company's vessels, after which time such video library must be returned to Videotel Productions at 84 Newman Street, London W1T 3EU, United Kingdom or retained on board for an annual payment of £200 without updates.

**7.    Obligations of the Hirer**

7.1    During the continuance of this Agreement the Hirer shall:

7.1.1    Inspect the Vodboxes on receipt thereof and notify the Company within 14 days of delivery by e-mail, fax or telephone that (so far as it is able to ascertain the same) the Vodboxes, Vodsticks and Materials are either defective or otherwise not in accordance with the Agreement. If no such notification is given the Vodboxes, Vodsticks and Materials shall be deemed to be complete and in good order and condition and fit for the purpose for which it is required by the Hirer and the Hirer shall be bound to accept and pay for the same accordingly;

7.1.2    use the Vodboxes, Vodsticks and Materials in a proper manner and with all reasonable care and to operate the same in accordance with any instructions issued for them;

7.1.3    not use the Vodboxes or Vodsticks for any purpose other than for the Materials and not to interfere or tamper with them nor allow any other person to do so unless previously agreed in writing by the Company;

7.1.4    not obliterate, move or to deface or cover up any identification plates or marks affixed to the Vodboxes, Vodsticks or the Materials by the manufacturer or the Company;

7.1.5    not use or permit the Materials to be used in contravention of any statutory provision or regulation or in any way contrary to law;

7.1.6    not sell or offer for sale, assign, mortgage, pledge, sub-let or transfer the Vodboxes, Vodsticks or the Materials or the benefit of this Agreement either in whole or in part;

7.1.7    not use the Vodboxes, Vodsticks and the Materials at any location or on any vessel other than as set out in Schedule 5;

7.1.8    not connect the Vodboxes to any network, LAN, WAN or Internet for any purpose;

7.1.9    notwithstanding Clause 7.1.8, be permitted to connect a Vodstick to the Vodbox to transfer data to a printer or email station;

7.1.10    be permitted to import to the Vodbox files containing records of training to maintain the OTMplus database and to input data directly to the Vodbox for the purpose of maintaining the OTMplus database; and

7.1.11    be responsible for the safe keeping of the Company VOD Boxes and the security of the Company Materials supplied to the Hirer locations as specified under Schedule 5, and will reimburse the Company for any loss or damage for the full reinstatement value being at least GB£7,500.

*Bouchard Transportation Co., Inc.*      

## 8.    Intellectual Property Rights

8.1    The Materials contain confidential information of the Company and all copyright trade marks and other intellectual property rights in the Materials are the exclusive property of the Company.

8.2    The Hirer shall not:

   8.2.1    make copies of the Materials;

   8.2.2    reverse copy, compile, modify, merge, translate decompile, disassemble copy or adapt the whole or any part of the Materials or create derivative works based on the whole or any part of the Materials and any associated documentation for any purpose (including for the purposes of correcting supposed errors in the Materials);

   8.2.3    assign, transfer, sell, lease, rent, charge or otherwise deal in or encumber the Materials or use the Materials on behalf of any third Party or make available the same to any third Party; or

   8.2.4    remove or alter any copyright or other proprietary notice on any of the Materials.

8.3    The Hirer shall:

   8.3.1    keep confidential the Materials and limit access to the same to those of its employees agents and sub-contractors who should properly be expected to use them for their proper purpose;

   8.3.2    notify the Company immediately if the Hirer becomes aware of any unauthorised use of the whole or any part of the Materials by any third Party or any other contravention of the Company's intellectual property rights; and

   8.3.3    without prejudice to the foregoing take all such other steps as shall from time to time be necessary to protect the confidential information and intellectual property rights of the Company in the Materials.

8.4    The Hirer shall inform all relevant employees agents and sub-contractors that the Materials constitute confidential information of the Company and that all intellectual property rights therein are the property of the Company and the Hirer shall take all such steps as shall be necessary to ensure compliance by its employees agents and sub-contractors with the provisions of this clause 8.

## 9.    General liability

9.1    Notwithstanding anything contained in this Agreement, the Company shall indemnify, defend and hold harmless the Hirer against, and the Hirer shall grant the Company sole control in its defence and disposition of, any claim which alleges that use of the Vodbox or the Materials infringes a copyright, trade secret, trademark or servicemark of a third person.

9.2    The Hirer shall be solely responsible for and hold the Company fully indemnified against all claims, demands, liabilities, losses, damages, proceedings, costs and expenses suffered or incurred by the Company as a result of any breach or default on the part of the Hirer in the discharge of its obligations under this Hire Agreement.

## 10.    Limitation of liability

10.1    Subject to clause 9.1 above, the following provisions set out the Company's entire liability (including any liability for the acts and omissions of its employees) to the Hirer in respect of:

   10.1.1    any breach of its contractual obligations arising under this Agreement; and

Bouchard Transportation Co., Inc.  

       10.1.2  any representation statement or tortious act or omission including negligence (but excluding any of the same made fraudulently) arising under or in connection with this Agreement.

10.2    Any act or omission on the part of the Company falling within clause 10.1 above shall for the purposes of this clause 10 be known as an "Event of Default".

10.3    Subject to the limit set out in clause 10.4 below the Company shall accept liability to the Hirer in respect of damage to the tangible property of the Hirer resulting from the negligence of the Company or its employees.

10.4    The Company's entire liability in respect of any Event of Default shall be limited to a maximum of one year's Hire Charge.

10.5    The Company shall not be liable to the Hirer in respect of any Event of Default for loss of profits goodwill or any type of special indirect or consequential loss (including loss or damage suffered by the Hirer as a result of an action brought by a third Party) even if such loss was reasonably foreseeable or the Company had been advised of the possibility of the Hirer incurring the same.

10.6    Subject to clause 9.1 above the company does not warrant that the Materials will meet the Hirer's requirements or that the operation of the Materials will be uninterrupted or error free or that any defect in the Materials will be corrected.

10.7    The Hirer shall use the Materials at its own risk and in no event will the Company be liable for any loss or damage of any kind.

10.8    Except as may be specifically stated herein, to the fullest extent permitted by applicable law, in no event shall the Company, nor any of its directors, employees or other representatives be liable for any damages, loss or claim of any kind howsoever arising out of or in connection with the use of the Materials including (without limitation) compensatory, direct or indirect, special, punitive, consequential or exemplary damages, lost profits, lost sales or business, loss of data or inability to use data, loss of or damage to property and claims of third parties irrespective of whether the Company or any of its directors, employees or other representatives has been informed of, knew of, or should known and the likelihood of such damages. This limitation applies to all causes of action including (without limitation) breach of contract, breach of warranty, negligence, strict liability, misrepresentation and other torts.

10.9    The Hirer hereby agrees to afford the Company not less than 60 days in which to remedy any Event of Default hereunder.

10.10  The Company shall have no liability to the Hirer in respect of any Event of Default unless the Hirer shall have served notice of the same upon the Company within 6 months of the date it became aware of the circumstances giving rise to the Event of Default or the date when it ought reasonably to have become so aware.

10.11  Nothing in this clause 10 shall confer any right or remedy upon the Hirer to which it would not otherwise be legally entitled.

**11.    Ownership and loss or damage**

11.1    The Vodboxes and the Materials shall at all times remain the property of the Company and the Hirer shall have no rights to the Vodboxes and the Materials other than as Hirer and the Hirer shall not do or permit or cause to be done any matter or thing whereby the rights of the Company in respect of the Vodboxes and the Materials are or may be prejudicially affected.

Bouchard Transportation Co., Inc.      

11.2   Risk as opposed to ownership of the Vodboxes and the Materials shall pass to the Hirer at the Commencement of Hire pursuant to clause 4.3 and the Hirer shall be responsible for the safekeeping of the same and for effecting and maintaining comprehensive insurance thereof throughout the term of the Agreement.

11.3   The Hirer shall not sell or Hire or otherwise deal with the Vodboxes and the Materials or any part thereof, but in the event of any breach of this clause the proceeds of such breach shall be deemed to be held by the Hirer on trust for the Company.

**12.   Term and Termination**

12.1   The Initial term shall be as set out in Schedule 4.

12.2   Either Party may terminate this Agreement at the end of the Initial Term by giving to the other Party at least 3 months notice in writing prior to the expiry of the Initial Term.  If no such notice is given then this Agreement shall continue subsequently for a further 12 months period ("extended period") using the same VOD(s) in use at the expiry of the Initial Term ("existing VOD"). Whilst updates of Materials, Credits, PIN numbers and security codes to the Hirer will continue to be forwarded during the extended period, due to age and hard drive capacity of the existing VOD, the Company cannot guarantee its successful operation.

In the event that an existing VOD fails during the extended period, a new replacement VOD will be supplied by the Company, under which a new Agreement for that particular VOD will be entered into between the Company and the Hirer at the prevailing Hire Charge. Upon expiry of the extended period, the existing VOD(s) and Materials will be returned to the Company by the Hirer. A new Agreement will be offered between the Company and the Hirer prior to expiry of the extended period. On acceptance of the new Agreement, new VOD(s) and Materials will be supplied.

12.2.1   Notwithstanding any other provisions of this Agreement, if during the term of this Agreement a vessel listed in the annexure to schedule 5 hereto is sold or scrapped and the Materials are returned to the Company at the Hirers expense, then the contract for that ship will be terminated forthwith, and any credit refunded to the Hirer.

12.3   If the Hirer shall fail to pay any Hire Charge or other sum payable under this within 30 days of its becoming due (whether demanded or not) or shall commit a breach of the other terms and conditions whether express or implied of this Agreement (or of the terms and conditions of any such Agreement as aforesaid) or shall do or allow to be done any act or thing which in the opinion of the Company may jeopardise the Company's rights in the Vodboxes and/or the Materials or any part thereof, then in each and every such case the Hirer shall be deemed to have repudiated this Agreement and the Company may in its sole discretion thereupon or at any time within three months thereafter by notice in writing to the Hirer for all purposes forthwith terminate the leasing constituted by this Hire Agreement.

12.4   If any of the following events shall occur, namely:

12.4.1   if any distress, execution, or other legal process shall be levied on or against the assets of the Hirer or any part thereof or against any premises or ship where the same may be or the Hirer shall permit any judgment against it to remain unsatisfied for seven days; or

12.4.2   in the event of an order being made or resolution passed for the winding up, dissolution, liquidation or bankruptcy of the Hirer (otherwise than for the purpose of reconstruction or amalgamation)or if a receiver or administrator is appointed, or if it suspends payment, ceases to carry on business or makes any special arrangement or composition with its creditors,

then in each and every such case the Hire constituted by this Agreement shall *ipso facto* and without notice terminate and no payment subsequently accepted by the Company without knowledge of such termination shall in any way prejudice or affect the operation of this clause.

*Bouchard Transportation Co., Inc.*      

12.5    The Hirer shall upon any termination under clauses 12.1–12.4 above pay to the Company all arrears of Hire Charges then due and all other sums accrued due and unpaid at the date of termination, together with interest thereon payable under clause 4.7 hereof; and any other sums which are or become due to the Company or to which the Company is entitled by way of damages or indemnity.

12.6    The termination of the Hire constituted by this Agreement shall not affect any rights of the Company or liabilities of the Hirer subsisting at the date of termination.

12.7    On termination of the Hire howsoever or whenever occasioned or on expiry of the Initial Period, the Hirer shall no longer be in possession of the Vodboxes and Materials with the Company's consent and shall (unless otherwise agreed with the Company) forthwith return the Vodboxes and the Materials to the Company at such address as the Company may direct in good order and in good working condition (fair wear and tear excepted) and at the Hirer's expense and risk. Without prejudice to the foregoing or to the Company's claim for any arrears of Hire Charges or other payments due hereunder or damages for any breach by the Hirer of this Agreement or any other rights hereunder, the Company will charge the Hirer GB£7,500 per Vodbox (which the Parties acknowledge is a reasonable estimate of the value of each Vodbox and the Materials) in the event that the Vodboxes and the Materials are not returned at the expiry of this Agreement.

12.8    In the event that the Vodbox and the Materials are not returned to the Company as a result of a vessel's total loss (which expression shall include constructive total loss), forced sale, requisition of the vessel or other occurrence, the Hirer shall pay the Company the cost of the Vodbox and the Materials for its full reinstatement value plus any Hire Charge accrued up until the date the Hirer notifies the Company following such occurrence.

### 13.    Continuation payment

13.1    Without prejudice to the provisions of clause 12.7 hereof, as from the due expiration of this Agreement and until such time as the Vodboxes and Materials shall have been returned, the Company may at its sole discretion require the Hirer to pay by way of recompense a monthly sum (payable in arrear) at the same rate per annum as the Hire Charge previously due in respect thereof.

13.2    This clause shall not confer upon the Hirer any right to the continued use or possession of the Vodboxes and the Materials.

### 14.    Force majeure

14.1    Neither Party shall be liable for any loss, damages or delay or failure in performance hereunder resulting from any force majeure event, including but limited to acts of God, fire, action of the elements, epidemics (SARS and/or SARS like event), war (declared or undeclared), warlike action, strikes or differences with workmen (except for disputes relating solely to employees), acts of the public enemy, federal or state laws, rules and regulations or any governmental authorities having or asserting jurisdiction in the premises or of any other group, organisation or informal association (whether or not formally recognised as a government), and any other cause beyond the reasonable control of either Party which makes continuance of operations impossible.

### 15.    Additional Vessels

15.1    The Hirer may at its option, and during the currency of the Agreement add additional vessels to this Agreement by notifying the Company in writing of its intention to add a vessel or vessels to this Agreement and providing to the Company the Name and IMO numbers of such vessels.

15.2    Upon receipt of a separate addendum the additional vessels will be added to this Agreement and the Hire Charge due under the Agreement will be varied accordingly.

15.3    In respect of each additional vessel added to this Agreement the term of the Agreement will be a term equivalent to the Initial Term commencing from the date that the additional vessels are added to the Agreement under this provision.

*Bouchard Transportation Co., Inc.*      

**16.   Forbearance**

16.1   No forbearance indulgence or relaxation on the part of the Company shown or granted to the Hirer in respect of any of the provisions of this Agreement shall in any way affect diminish restrict or prejudice the rights or powers of the Company under this Agreement or operate as or be deemed to be a waiver or any breach by the Hirer of the terms and conditions of this Agreement.

**17.   Concurrent remedies**

17.1   No right or remedy herein conferred upon or reserved to the Company is exclusive of any other right or remedy herein or by law or equity provided or permitted but each shall be cumulative of every other right or remedy given hereunder or now or hereafter existing and may be enforced concurrently therewith or from time to time.

**18.   Notices**

18.1   Save as otherwise provided in this Agreement, any communication to be given under this Agreement shall be sent to any Party by registered mail or hand delivery to the relevant address given in clause 18.3 or by facsimile transmission to the relevant number given in clause 18.3, in either case marked for the attention of the relevant person named in clause 18.3, or to such other address or number in the United Kingdom and/or person as either Party may from time to time notify in writing to the other.

18.2   A communication sent by registered mail shall be deemed given 24 hours after posting and a communication sent by facsimile transmission shall be deemed given at the time of transmission. In proving service of the same it will be sufficient to prove, in the case of a letter, that it was stamped or franked registered mail, correctly addressed and placed in the post and, in the case of a facsimile transmission, that such facsimile was duly transmitted to the correct number.

18.3   If to the Company         : **+44 207 299 1818**

         If to the Hirer             : **+1 631 390 4905**

**19.   Waiver of set off**

19.1   The Hirer hereby waives all and any future claims and rights of set off against any Hire Charges or any payment due hereunder and agrees to pay the Hire Charges and other amounts hereunder regardless of any equity, set off or cross-claim on the part of the Hirer against the Company.

**20.   Entire Agreement**

20.1   This Agreement shall be deemed to be incorporated in all contracts between the Company and Hirer for the Hire of Vodboxes and the Materials. In the case of any inconsistency with any order, letter or form of contract sent by the Hirer to the Company or any other communication between the Hirer and the Company (whatever may be their respective dates) the provisions of this Agreement shall prevail unless expressly varied in writing and, in the case of the Company, signed by a director thereof. No statement, description, information, warranty, condition, or recommendation contained in any price-list, advertisement, documentation or communication or made verbally by any of the agents or employees of the Company shall be construed so as to extend, vary or override any provisions of this Agreement in any way.

**21.   Assignment**

21.1   Either Party may transfer or assign the rights under, pursuant to and incidental to this Agreement whether in whole or in part within the affiliated companies of either Party by obtaining the prior written consent, and by written notice of thirty (30) days, of the other Party.

**22.   Time**

22.1   Time wherever mentioned shall be of the essence of this Agreement.

*Bouchard Transportation Co., Inc.*      

**23.    Headings**

23.1    The headings of this Agreement are for identification only and shall not be deemed to be part hereof or be taken into consideration in the interpretation or construction of this Agreement.

**24.    Good Faith**

24.1    Each of the Parties undertakes with each other to do all things reasonably within their power which are necessary or desirable to give effect to the spirit and intent of this Agreement.

**25.    Appendixes/Schedules**

25.1    The Appendixes/Schedules hereto, if any, shall form part of this Agreement and shall be read, taken and construed as an integral part of this Agreement.

**26.    Governing law**

26.1    This Agreement shall be governed by and construed in accordance with English law and the Parties hereto agree to submit to the non-exclusive jurisdiction of the English courts.

**27.    Exclusion of third Party rights**

27.1    The Contracts (Rights of Third Parties) Act 1999 shall not apply to this Agreement and no rights or benefits expressly or impliedly conferred by it shall be enforceable under that Act against the Parties to it by any other person.


SIGNED for and on behalf of VIDEOTEL MARINE INTERNATIONAL LIMITED

Signature

Print Name    :    Nigel D. Cleave
Date          :    6th May 2013.


SIGNED for and on behalf of BOUCHARD TRANSPORTATION CO., INC. (The Hirer)

Signature

Print Name    :    MICHAEL BRADY
Date          :    15 MAY 13

Number of Originals issued:

Bouchard Transportation Co., Inc.            

**Schedule 1** _____ **Materials**

See attached spreadsheet.

**Schedule 2** _____ **Hire Charge**

For the Vodbox and Materials:

Year 1 ........................... GB£ 1,400.00
Year 2 ........................... GB£ 1,428.00
Year 3 ........................... GB£ 1,456.56
Year 4 ........................... GB£ 1,485.69

**Schedule 3** _____ **Credit Limit**

Access :  Unlimited for 50 selected titles, other titles unless arranged are pay per view.
Credits :  Credits will be sold in blocks of fifty (50) at a cost of £250 per vessel.
           20 free credits issued per original build per system.

Updated titles are supplied approximately annually by DVD and are credit free, excluding freight.

5 new titles are added annually free of charge, excluding training courses, upto a maximum total of 70 titles per Mini-VOD at any one time.

**Schedule 4** _____ **Initial Term**

Initial Term:  4 years.

**Schedule 5** _____ **Permitted Locations for Use of the Vodbox and Materials**

     1.       Vessels owned or managed by the Hirer;

     2.       Vessels owned or managed by the Hirer acquired after this Agreement was entered into; and

     3.       The main office of the Hirer whose address is included on Page 2 of this Contract.

Bouchard Transportation Co., Inc.  

### Annex to Schedule 5

## Vessels Owned or Managed by the Hirer

| # | Tugs | IMO # | E-MAIL ADDRESS |
|---|------|-------|----------------|
| 1. | BARBARA E. BOUCHARD | 9053141 | tugbarbara@bouchardfleet.com |
| 2. | BOUCHARD GIRLS | 8835102 | tuggirls@bouchardfleet.com |
| 3. | BRENDAN J. BOUCHARD | 9219501 | tugbrendan@bouchardfleet.com |
| 4. | BUSTER BOUCHARD | 7814591 | tugbuster@bouchardfleet.com |
| 5. | CAPT FRED BOUCHARD | 8115825 | tugcaptfred@bouchardfleet.com |
| 6. | DANIELLE M. BOUCHARD | 1053010 | tugdanielle@bouchardfleet.com |
| 7. | ELLEN S. BOUCHARD | 8117952 | tugellen@bouchardfleet.com |
| 8. | EVENING MIST | 7626243 | evebreeze@bouchardfleet.com |
| 9. | EVENING STAR | 9629768 | tugeveningstar@bouchardfleet.com |
| 10. | EVENING TIDE | 7435759 | tugtide@bouchardfleet.com |
| 11. | FREDERICK E. BOUCHARD | 7400479 | tugfrederick@bouchardfleet.com |
| 12. | JANE A. BOUCHARD | 9269702 | tugjane@bouchardfleet.com |
| 13. | J. GEORGE BETZ | 9137325 | tugjgbetz@bouchardfleet.com |
| 14. | LINDA LEE BOUCHARD | 9405394 | luglindalee@bouchardfleet.com |
| 15. | MARION  C. BOUCHARD | 7901978 | tugmarion@bouchardfleet.com |
| 16. | MORTON S. BOUCHARD, JR. | 7400481 | tugmortonjr@bouchardfleet.com |
| 17. | MORTON S. BOUCHARD IV | 9269740 | tugmorton4@bouchardfleet.com |
| 18. | RALPH E. BOUCHARD | 8809983 | tugralph@bouchardfleet.com |
| 19. | RHEA  I. BOUCHARD | 8117964 | tugrhea@bouchardfleet.com |
| 20. | ROBERT J. BOUCHARD | 9085821 | tugrobert@bouchardfleet.com |
| 21. | STATEN ISLAND OFFICE | Office | Lshelley@bouchardtransport.com |
| 22. | MAIN OFFICE | Office | mbrady@bouchardtransport.com |

**Schedule 6**                   **Nominated Address for Updates and Security Codes**


Mr Mike Brady, VP HSSE
Bouchard Transportation Co., Inc.
58 South Service Road, Suite 150
Melville, NY 11747 USA
Tel     : +1-631-390-4900
Fax    : +1-631-390-4905
Email  : mbrady@bouchardtransport.com

Bouchard Transportation Co., Inc.                    **⊓ VIDEOTEL**

15.1    Each party undertakes that it shall not at any time disclose to any person any confidential information concerning the business, affairs, customers, clients or suppliers of the other party, except as permitted by clause 15.2.

15.2    Each party may disclose the other party's confidential information:

15.2.1  to its employees, officers, representatives or advisers who need to know such information for the purposes of carrying out the party's obligations under this Agreement. Each party shall ensure that its employees, officers, representatives or advisers to whom it discloses the other party's confidential information comply with this clause 15; and

15.2.2  as may be required by law, court order or any governmental or regulatory authority.

15.3    No party shall use any other party's confidential information for any purpose other than to perform its obligations under this Agreement.

15.4    The obligations of the parties under all provisions of this clause shall survive the expiry or termination of this Agreement for whatever reason.

16.     **Termination**

16.1    Videotel may terminate this Agreement without prejudice to its other remedies forthwith by notice in writing to the Hirer if the Hirer:

16.1.1  commits a material breach of this Agreement that if remediable is not remedied within 7 days of a notice from the other party specifying the breach and requiring it to be remedied; or

16.1.2  enters into compulsory or voluntary liquidation (otherwise than for the purpose of reconstruction or amalgamation), is unable to pay its debts or compounds with or convenes a meeting of its creditors or has a receiver or manager or an administrative receiver or an administrator appointed of its assets or ceases for any reason to carry on business or takes or suffers any similar action which in the opinion of the party giving notice means that the other may be unable to pay its debts;

16.1.3  Suffers a change of control.

16.2    Without prejudice to Videotel's other rights and remedies, Videotel shall have the right, upon providing 30 days' prior written notice to the Hirer, to terminate this Agreement for whatever reason, without being required to prove default on the part of the Hirer or satisfy any requirement of reasonableness or good faith.

16.3    Termination of this Agreement for whatever reason shall not affect the accrued rights of the parties arising in any way out of this Agreement as at the date of termination and in particular but without limitation the right to recover damages from the other.

16.4    Upon the termination of this Agreement for whatever reason the Hirer shall immediately cease to make any use of the Deliverables and will deliver up to Videotel any Deliverables in its possession or control.

16.5    Upon termination of this Agreement for whatever reason Videotel shall, at the request of the Hirer, use

its reasonable endeavors to deliver up to the Hirer one copy of any Input Material that, at the date of termination, is not in the possession of the Hirer but is held on the Server, in a format to be chosen by Videotel.

16.6    All provisions of this Agreement which in order to give effect to their meaning need to survive its termination shall remain in full force and effect thereafter.

17      **Assignment**

17.1    The Hirer shall not assign, transfer, sub-contract or in any other manner make over to any third party the benefit and/or burden of this Agreement without the prior written consent of Videotel.

17.2    In the event of an assignment this Agreement shall be binding upon such successor or assignee and the name of a party appearing herein shall be deemed to include the names of any such successor or assignee.

18      **Entire Agreement and Amendment**

18.1    This Agreement constitutes the entire agreement and understanding of the parties and supersedes all prior oral or written agreements, understandings or arrangements between them relating to the subject matter of this Agreement. Neither party shall be entitled to rely on any agreement, understanding or arrangement that is not expressly contained in this Agreement and no change may be made to it except in writing signed by duly authorised representatives of both parties.

18.2    No failure or delay on the part of either of the parties to exercise any right or remedy under this Agreement shall be construed or operate as a waiver thereof nor shall any single or partial exercise of any right or remedy preclude the further exercise of such right or remedy as the case may be. The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights or remedies provided by law.

19      **Notice**

19.1    Any notice or other document to be given under this Agreement shall be in writing and shall be deemed to have been duly given if left at or sent by hand or by registered post or by facsimile or other electronic media to a party at the address or facsimile number set out below for such party or such other address as such party may from time to time designate by written notice to the other.

19.2    Any such notice or other document shall be deemed to have been received by the addressee two working days following the date of dispatch if the notice or other document is sent by registered post, or simultaneously with the delivery or transmission if sent by hand or if given by telex, facsimile or other electronic means to the addresses shown in the particulars hereto which will be the addresses for service of proceedings for the parties.

20      **Governing law and jurisdiction**

20.1    The validity, construction and performance of this Agreement shall be governed by English law, and shall be subject to the exclusive jurisdiction of the High Court of Justice in England;

Bouchard Transportation Co., Inc.           web FTA          □ VIDEOTEL

## Vessels Owned or Managed by the Hirer

### For 20 Vessels and 2 Office Licences

### Vessels
(Hirer to Provide)

| #   | Tugs                      | IMO #   | E-MAIL ADDRESS                       |
|-----|---------------------------|---------|--------------------------------------|
| 1.  | BARBARA E. BOUCHARD       | 9053141 | tugbarbara@bouchardfleet.com         |
| 2.  | BOUCHARD GIRLS            | 8835102 | tuggirls@bouchardfleet.com           |
| 3.  | BRENDAN J. BOUCHARD       | 9219501 | tugbrendan@bouchardfleet.com         |
| 4.  | BUSTER BOUCHARD           | 7814591 | tugbuster@bouchardfleet.com          |
| 5.  | CAPT FRED BOUCHARD        | 8115825 | tugcaptfred@bouchardfleet.com        |
| 6.  | DANIELLE M. BOUCHARD      | 1053010 | tugdanielle@bouchardfleet.com        |
| 7.  | ELLEN S. BOUCHARD         | 8117952 | tugellen@bouchardfleet.com           |
| 8.  | EVENING MIST              | 7626243 | evebreeze@bouchardfleet.com          |
| 9.  | EVENING STAR              | 9629768 | tugeveningstar@bouchardfleet.com     |
| 10. | EVENING TIDE              | 7435759 | tugtide@bouchardfleet.com            |
| 11. | FREDERICK E. BOUCHARD     | 7400479 | tugfrederick@bouchardfleet.com       |
| 12. | JANE A. BOUCHARD          | 9269702 | tugjane@bouchardfleet.com            |
| 13. | J. GEORGE BETZ            | 9137325 | tugjgbetz@bouchardfleet.com          |
| 14. | LINDA LEE BOUCHARD        | 9405394 | tuglindalee@houchardfleet.com        |
| 15. | MARION  C. BOUCHARD       | 7901978 | tugmarion@bouchardfleet.com          |
| 16. | MORTON S. BOUCHARD, JR.   | 7400481 | tugmortonjr@bouchardfleet.com        |
| 17. | MORTON S. BOUCHARD IV     | 9269740 | tugmorton4@bouchardfleet.com         |
| 18. | RALPH E. BOUCHARD         | 8809983 | tugralph@bouchardfleet.com           |
| 19. | RHEA  I. BOUCHARD         | 8117964 | tugrhea@bouchardfleet.com            |
| 20. | ROBERT J. BOUCHARD        | 9086821 | tugrobert@bouchardfleet.com          |
| 21. | STATEN ISLAND OFFICE      | Office  | Lshelley@bouchardtransport.com       |
| 22. | BOUCHARD OFFICE           | Office  | mbrady@bouchardtransport.com         |

# EXHIBIT B

*Bouchard Transportation Co., Inc.*      □ **VIDEOTEL**

# Videotel webFTA Agreement

**The Parties:**

1. **Videotel Marine International Limited,** 84 Newman Street, London, W1T 3EU, United Kingdom. ("Videotel")  Tel : +44 207 299 1800  Fax : +44 207 299 1818  Email : mail@videotel.com

2. **Bouchard Transportation Co., Inc,** 58 South Service Rd, Suite 150, Melville, NY 11747 USA , Tel: +1 Tel: 1-631-390-4900, Fax: 1-631-390-4905, Email: mbrady@bouchardtransport.com

**The Services:**

The provision by Videotel to the Hirer of a web-based Fleet Training Administrator ("webFTA"), to be used in connection with Videotel's Videotel On Demand ("VOD") products and which provides access to the Hirer's training records held by the Server. Access is by login to the Videotel website and entry of a company identifier plus a username and password. The Hirer can access the following Services relating to the Hirer's' fleet training records.

These include:

1. Viewing, managing and reporting records of training events held onboard ship.
2. Importing training records from the Hirer's ships.
3. Exporting training records to the Hirer's ships.
4. Importing details of the Hirer's crew including: name, date of birth, rank, nationality and training identifier.
5. Preparing and managing training schedules and export of the schedules to Hirer's ships.
6. Administration of these Services including the adding and editing of users.
   ("the Services")

These Services are dependent upon the installation onboard of Videotel's Onboard Training Manager (OTM*plus*) software.

**Vessels:**
Subject to the sums payable by the Hirer to Videotel under this Agreement. The Hirer will be entitled to use the Services on the Vessels referred to in the Schedule of Vessels or Vessels added to this Agreement, in accordance with the Terms and Conditions of the applicable VOD / Safety Training Library Agreement(s) but not otherwise.

| The Contract Price | The Contract Duration |
|---|---|
| £144.00 per vessel for the first 12 months increasing by 2% every 12 months thereafter. The first such increase shall be effective from 12 months after the commencement of this Agreement provided that the contract price cannot be increased more than once in any 12-month period. | Subject to the terms and conditions attached, the contract terms shall be 4 years from the date hereof ("the Initial Term"). |

| | |
|---|---|
| Signed<br>For and on behalf of the Hirer<br>Date: 15 May 13 | Signed<br>For and on behalf of Videotel<br>Date: 6th May 2013 |

**Terms and Conditions of this Agreement:** Your attention is drawn to the terms and conditions attached which form part of this Agreement.

*Bouchard Transportation Co., Inc.*          web FTA          **☐☐▮VIDEOTEL**

## Terms and Conditions

**1.      Definitions**

"**the Commencement Date**" means the date of this Agreement;

"**the Deliverables**" means all data, information, programmes and other materials and software which are provided by Videotel to the Hirer but does not include the Input Materials;

"**the Employees**" means the directors, employees, consultants, contractors and subcontractors of the Hirer who obtain or use the Service;

"**the Expiry Date**" means the date on which the Initial Term or any successive renewal period expires;

"**the Fee**" means the annual fee as set out in the particulars;

"**the Input Material**" means any document, data or other materials provided by the Hirer in connection with the Services including but not limited to the training records;

"**the Intellectual Property Rights**" means patent, rights in design, trade marks, trading, business or domain names and email addresses, copyrights (including any such rights in typographical arrangements, websites or software) whether registered or not and any applications to register or rights to apply for the registration of any of the foregoing, rights in inventions, know-how, trade secrets and other confidential information, rights in databases and all other intellectual property rights of a similar or corresponding character which subsist now or in the future in any part of the world;

"**the Server**" means the computer Server equipment operated by Videotel in connection with the Services on which the Web-Site is hosted;

"**the Site**" means the location from which the Services are to be accessed under this Agreement which will be notified in writing to the Hirer by Videotel;

"**the Software**" means the onboard training manager software owned, designed or used by Videotel in connection with the delivery of the Services and provided to the Hirer to allow use of the Services including source code, object code, code listings, control programmes, programming language, technical and user manuals and data related thereto and whether in machine readable form, programming language or any other language or symbols and whether stored, encoded, recorded or written on disk, tape, film, memory device, paper or other Media and all Intellectual Property Rights in any of the foregoing;

"**the Specified Purpose**" means the Hirer's Employee training administration and training record keeping scheme for use in conjunction only with Videotel's "Videotel on Demand" ("VOD") and any other Videotel products and not otherwise;

"**the Territory**" means the world;

"**the Web-Site**" means the area on the Server allocated by Videotel to the Hirer for use by the Hirer to utilise the Services, and the web site and ancillary

materials designed by Videotel and all Intellectual Property Rights in all designs, graphics, look and feel concepts, text, data, images, files, object code, source code, routines, macros, logos, structures, diagrams, sequences contained in any files or pages constituting or displaying in any pages or other constituents of such web-site or the Software.

**2.      Supply of the Services**

2.1      Videotel shall provide the Services to the Hirer in accordance with this Agreement. Any changes or additions to the Services or this Agreement must be agreed in writing by Videotel and signed by an authorised signatory of each party.

2.2      Videotel will provide the Service to the Hirer only while the Hirer has a current contract with Videotel under which Videotel is to supply its VOD to the Hirer.

2.3      Videotel may at any time without notifying the Hirer and without thereby incurring any liability make any changes to the Services that are necessary to comply with any applicable safety, security or other statutory or similar requirements or any change to any terms and conditions of any third party to which Videotel is subject relating to the provision of the Services.

2.4      Unless specifically agreed in writing between the parties, the provision and maintenance of the telecommunication Services necessary for connection to the Services is not included in the Services and remains the sole and exclusive responsibility of the Hirer.

2.5      Whilst Videotel shall use reasonable endeavours to adhere to any dates proposed by either Videotel or the Hirer for the provision of the Services, any such date is an estimate only and Videotel accepts no liability for failure to meet such dates for any reason.

2.6      Videotel shall use reasonable endeavours to provide a reliable service but does not undertake or warrant that the Services will be available, uninterrupted or error-free.

2.7      In the event of default in the Services, the Hirer must promptly and in any event within 3 working days report the fault by fax or electronic mail to Videotel. Upon receipt of the fault report, Videotel will take reasonable steps without undue delay to correct the fault. Videotel shall not, be liable for interruptions of the Service or down-time of a Server for any reason.

2.8      Videotel does not undertake to provide any technical support or user support with regard to any hardware (including peripherals), software, products or Services provided by third parties.

2.9      Videotel does not warrant the compatibility of the Services with any hardware (including peripherals), software, and products or Services other than as set out in this Agreement or that the Services are suitable or appropriate to the specific requirements of the Hirer.

2.10    Videotel may:

2.10.1   temporarily suspend for the purpose of repair, maintenance or improvement, the Services, without notice; Videotel undertakes to use reasonable endeavours to restore the Services as soon as practicable after such suspension;

*Bouchard Transportation Co., Inc.*  **VIDEOTEL**

2.10.2 install in the Software any modifications, improvements, updates or amendments or install any security device which in the sole opinion Videotel is necessary to improve the Services;

2.10.3 give or update instructions regarding the use of the Services which in Videotel's sole opinion is necessary in the interests of safety, security or to maintain or improve the quality of the Services to Videotel's customers generally and any such instructions shall whilst in force, be deemed part of this Agreement; and/or

2.10.4 vary the technical specification of the Services for operational reasons;

2.10.5 use the Input Materials for testing purposes which in the sole opinion of Videotel is necessary to improve the Services.

2.11 The Hirer hereby authorises Videotel to access and modify any internal page, directory, cgi-bin directory, and any other directory or program, which Videotel reasonably considers necessary for the supply of the Services and will upon request supply Videotel with any pass codes and other information necessary for this purpose.

**3. Additional Vessels**

3.1 The Hirer may during the currency of this Agreement add additional Vessels to this Agreement by notifying Videotel in writing of its intention to add a Vessel or Vessels to this Agreement, providing the name and IMO numbers of such Vessels.

3.2 Upon receipt of such written request the additional Vessels will be added to this Agreement and the Contract Price will be varied accordingly.

3.3 In respect of each additional Vessel added to this Agreement the term of the Agreement will be equivalent to the Initial Term commencing from the date that the additional Vessels are added to the Agreement under this provision.

**4. Licence**

4.1 In consideration of the payment of the Fee by the Hirer Videotel grants to the Hirer a non-transferable, non-exclusive, limited-use licence for the duration of this Agreement to use the Software and the Deliverables in accordance with this Agreement and the directions from Videotel from time to time (the "Licence").

4.2 All Intellectual Property Rights in or relating to the Software shall belong exclusively to Videotel. The Hirer will not acquire any Intellectual Property Rights and any Intellectual Property Rights in the Software by operation of law or otherwise.

4.3 The Licence is personal to the Hirer and may not be assigned to any third party. Further licences, licensees, uses and other matters not licensed under this Agreement shall only be granted where Videotel so consents and on payment of additional licence fees.

4.4 Insofar as Videotel provides the Hirer with Software and/or the Services dependent on licence or permissions from third parties the licence conditions to which Videotel is subject will be deemed to form part of

the Hirer's obligations to Videotel under this Agreement and upon any termination of such third party licences or permissions Videotel may without liability terminate this Agreement.

4.5 The Licence shall be of the object code version of the Software and to the extent that such actions may be limited at law the Hirer shall not reverse engineer, decompile, modify, translate or disassemble the Software.

4.6 The Hirer will not replicate or interrogate any XML/HTML source code from the Server.

4.7 The Hirer will not use the Services, the Software or the Web-Site for any purpose other than the Specified Purpose from the Site or permit any third party access to the Services, the Software or the Web-Site.

4.8 The Hirer shall grant to Videotel a non-transferable, non-exclusive licence for the duration of the Agreement to use the Input Materials in accordance with this Agreement.

**5. Hosting**

5.1 Videotel makes no representation and give no warranty as to the accuracy or quality of information received by any person via the Server and Videotel shall have no liability for any loss or damage to any data stored on the Server.

5.2 The Hirer shall effect and maintain adequate insurance cover in respect of any loss or damage to data stored on the Server.

5.3 The Hirer represents and warrants to Videotel as follows:

5.3.1 that it will use the Web-Site allocated only for lawful purposes;

5.3.2 that it will not use the Server in any manner which infringes any law or regulation or which infringes the rights of any third party, nor that it will authorise or permit any other person to do so;

5.3.3 that it will not post, link to or transmit:

5.3.3.1 any material, which is unlawful, threatening, abusive, malicious, defamatory, obscene, pornographic, blasphemous, profane or otherwise objectionable in any way;

5.3.3.2 any material containing a virus or other hostile computer programme;

5.3.3.3 any material which constitutes, or encourages the commission of, a criminal offence or which infringes any patent, trade mark, design right, copyright or any other intellectual property right or similar rights of any person which may subsist under the laws of any jurisdiction.

5.3.4 that it will keep secure any identification, password and other confidential information relating to its account and shall notify Videotel immediately of any known or suspected unauthorised use of its account or breach of security, including loss, theft or unauthorised disclosure of its password or other security information.

*Bouchard Transportation Co., Inc.*    **□ VIDEOTEL**

5.3.5   that it will observe the procedures that Videotel may from time to time prescribe and shall make no use of the Services, which is in the sole opinion of Videotel detrimental to other customers of Videotel.

5.3.6   Videotel will use reasonable endeavours to ensure the integrity and security of the Server. Videotel do not guarantee that the Server will be free from unauthorised clients or hackers.

5.3.7   If the Hirer uses Server resources to such an extent that the Hirer in Videotel's reasonable opinion jeopardises Server performance and resources (for example bandwidth and/or processor utilisation) for Videotel's other customers, Videotel reserves the right to suspend or curtail provision of the Services to the Hirer immediately and without thereby incurring liability. This policy is only implemented in extreme circumstances and is intended to prevent the misuse of the Server.

**6.   Intellectual Property Rights**

6.1   All Intellectual Property Rights in any Input Material shall belong to the Hirer.

6.2   The Hirer warrants that any Input Material and its use by Videotel for the purpose of providing the Services will not infringe the copyright or other rights of any third party, and the Hirer shall indemnify Videotel against any losses, damages, costs, expenses or other claims arising from any such infringement.

6.3   Intellectual Property Rights to photos, graphics, CGI programmes that are not owned by Videotel remain the property of their respective owners and may only be utilised by the Hirer and always in accordance with the terms of any applicable licence.

6.4   The Hirer acknowledges and agrees that all Intellectual Property Rights in the Software and Deliverables vests and shall always remain vested in Videotel or its respective licensors, successors in title, assignees and the Hirer has no right, title or interest in or to such Intellectual Property Rights other than as expressly set out in this Agreement.

**7.   Content and Use**

7.1   The Hirer shall use all reasonable endeavours to ensure that content and use of the Services conforms to the laws applicable thereto and shall not knowingly permit any illegal use or such use that may in the opinion of Videotel bring Videotel into disrepute.

7.2   The Hirer undertakes for itself and on behalf of its Employees:

7.2.1   not use the Services to send or receive any material which is offensive, abusive, indecent, obscene or menacing; or in breach of confidence, copyright, privacy or any other rights;

7.2.1.1   not to cause annoyance, inconvenience or needless anxiety; or breach any of the provisions as contained within the clauses of this Agreement; or

7.2.1.2   other than in conformance with acceptable use policies of any connected networks and the Internet standards.

7.2.2   to use the Services for the Specified Purpose only;

7.2.3   to access the Services at the Site;

7.2.4   promptly to comply with the instructions of Videotel in relation to the Services;

7.2.5   not to copy or publish any of the Services or Deliverable without the prior consent of Videotel;

7.2.6   not to do anything in relation to the Services or the Deliverable, including using them with other material or advertisement, that might diminish the value of the Services or the Deliverables or the reputation of Videotel, and not to do anything that may breach any law or regulation including anything that is libellous, obscene or defamatory or that infringes or may infringe the rights of the Licensor or of any third party.

7.2.7   that it shall not during the term of this Agreement and after termination or expiration of this Agreement for any reason for a period of 12 months starting on the date of termination or expiration of this Agreement compete with Videotel either directly or indirectly by providing Services which are the same as or similar to the Services provided by Videotel including the provision of Services and related products which are the same as or similar to the Services and/or Deliverables and related products or perform the same or similar functions as the Services and/or Deliverables.

7.3   Videotel may discontinue the Service if after due warning the Hirer continues to permit illegal or disreputable use as described in this clause. If Videotel suspends the Services for contravention of the above conditions of this clause, Videotel can refuse to restore the Services until it receives an acceptable assurance from the Hirer that there will be no further contravention.

**8.   Reselling**

8.1   The Hirer shall only use the Services, Deliverables and Software for the internal purposes of its business and it will not operate any of the Services, Deliverables or Software in bureau mode or licence or sub-licence any other party to use the Services, Deliverables or Software or resell any of the Services.

8.2   The Hirer shall not purport to do any of the above or claim that any dealing by it or its Employees or agents with the Services or any part is a dealing by Videotel.

8.3   The Hirer will indemnify Videotel against any claims from a party with whom the Hirer has contracted or purported to contract in connection with any of the Services.

**9.   Insurance**

9.1   The Hirer shall maintain such insurance as it shall consider necessary or appropriate to cover it for all usual business and other risks to which it is subject including without limitation loss or damage to any Input Material howsoever caused, Service downtime or telecommunications or other failure.

**10.   Force Majeure**

10.1   Videotel is not liable for any breach of this Agreement or liable for any delay or failure in performance of any part of these conditions and its commitments when caused as a result of Force Majeure, war, civil

Bouchard Transportation Co., Inc.

web FTA

□│VIDEOTEL

disorder, industrial disputes, inclement weather, acts of local or central government or other competent authorities, and failure by other service providers.

**11.    Warranty and Liability**

11.1    Videotel warrants to the Hirer that the Services will be provided using reasonable care and skill. Where Videotel supplies in connection with the provisions of the Service any goods or Services supplied by a third party, Videotel does not give any warranty, guarantee or other term as to their quality, fitness for purpose or otherwise.

11.2    Videotel shall have no liability to the Hirer for any loss, damage, costs, expenses or other claims for compensation arising from any Input Material or instructions supplied by the Hirer which are incomplete, incorrect, inaccurate, illegible, out of sequence or in the wrong form, or arising from their late arrival or non-arrival, or any other fault of the Hirer.

11.3    Except as expressly provided in this Agreement, Videotel shall not be liable to the Hirer by reason of any representation (unless fraudulent), or any implied warranty, condition or other term, or any duty at common law, for any loss of profit or any indirect, special or consequential loss, damage, costs, expenses or other claims (whether caused by the negligence of Videotel, its employees or agents or otherwise) which arise out of or in connection with the provision of the Services or their use by the Hirer and the entire liability of Videotel under or in connection with the Agreement shall not exceed the amount of Videotel's fee paid by the Hirer to Videotel for the provision of the Services in the three months preceding the event giving rise to any claim, except as expressly provided in this Agreement.

11.4    Videotel shall not be liable to the Hirer or be deemed to be in breach of this Agreement by reason of any delay in performing, or failure to perform, any of Videotel's obligations in relation to the Services and time shall not be of the essence of this Agreement or any Services provided pursuant to this Agreement, whether or not the delay or failure was due to any cause beyond Videotel's reasonable control.

11.5    The Hirer acknowledges that Videotel has no control over the information inputted in connection with the Service and that Videotel does not examine the use to which the Hirer puts the Service.

11.6    Videotel shall have no liability whatsoever for the acts or omissions of other providers of telecommunication Services or for faults in or failures of their apparatus.

11.7    Videotel is not liable for loss in connection with this Agreement or otherwise whether direct or indirect of business, revenue or profits, anticipated savings or wasted expenditure, corruption or destruction of data or for any indirect or consequential loss whatsoever.

11.8    Videotel makes no warranty as regards to its Services or equipment and will not be responsible for any damage allegedly suffered or claimed by the Hirer for any reason including but not limited to loss of data, wrong or non deliveries and service interruptions.

11.9    Videotel's total aggregate liability for any claim under this Agreement, in tort, negligence or otherwise arising out of or in connection with the provision of the Services shall be limited to the amount of the annual Fee paid by the Hirer to Videotel in the current year in respect of the Services.

11.10   In any event, no claim shall be brought by the Hirer or on behalf of the Hirer unless the Hirer notifies Videotel of the claim within 28 days of it arising.

**12.    Indemnity**

12.1    The Hirer shall indemnify and hold Videotel harmless from and against any and all liabilities, losses, damages, costs and expenses in relation to any claims or actions brought against Videotel (including any claim in contract, tort or for defamation, obscenity or breach of privacy) based on or resulting from any breach by the Hirer of the terms of this Agreement.

12.2    The Hirer will procure that its Employees will observe all of the terms and conditions of this Agreement that apply to the Hirer as if a party to it in the capacity of the Hirer.

**13.    Duration**

13.1    The Agreement shall continue for the initial Term and thereafter unless or until terminated by the Hirer giving to Videotel not less than 3 months written notice expiring on the Expiry Date and in default of such notice shall be renewed for further successive periods of 12 months each such period being subject to termination by the Hirer giving to Videotel not less than 3 months written notice expiring on the relevant Expiry Date. Videotel may terminate this Agreement by giving to the Hirer not less than 30 days notice in writing expiring at any time.

**14      Payment**

14.1    In consideration of the rights and licenses granted under this Agreement, the Hirer shall pay the annual Contract Price commencing on the Commencement Date.

14.2    The Contract Price shall be paid to Videotel (without set-off or deduction).

14.3    The Contract shall exclude VAT or any other applicable equivalent local tax (if any), which Videotel shall add to its invoices at the appropriate rate.

14.5    The Hirer shall pay each invoice submitted to it by Videotel in full and cleared funds within 30 days of receipt in such manner as Videotel shall specify.

14.6    Videotel may charge interest on any sum outstanding to it at the rate of 1.5% per calendar month compounded quarterly until payment

14.7    Time for payment shall be of the essence.

14.8    All sums payable to Videotel under the Agreement shall become due immediately on its termination, despite any other provision. This clause is without prejudice to any right to claim for interest under the law, or any such right under the Agreement.

14.9    Videotel may, without prejudice to any other rights it may have, set off any liability of the Hirer to Videotel against any liability of Videotel to the Hirer.

**15.    Confidentiality**

*Bouchard Transportation Co., Inc.*        **⊓⊓VIDEOTEL**

15.1    Each party undertakes that it shall not at any time disclose to any person any confidential information concerning the business, affairs, customers, clients or suppliers of the other party, except as permitted by clause 15.2.

15.2    Each party may disclose the other party's confidential information:

15.2.1    to its employees, officers, representatives or advisers who need to know such information for the purposes of carrying out the party's obligations under this Agreement. Each party shall ensure that its employees, officers, representatives or advisers to whom it discloses the other party's confidential information comply with this clause 15; and

15.2.2    as may be required by law, court order or any governmental or regulatory authority.

15.3    No party shall use any other party's confidential information for any purpose other than to perform its obligations under this Agreement.

15.4    The obligations of the parties under all provisions of this clause shall survive the expiry or termination of this Agreement for whatever reason.

16.    **Termination**

16.1    Videotel may terminate this Agreement without prejudice to its other remedies forthwith by notice in writing to the Hirer if the Hirer:

16.1.1    commits a material breach of this Agreement that if remediable is not remedied within 7 days of a notice from the other party specifying the breach and requiring it to be remedied; or

16.1.2    enters into compulsory or voluntary liquidation (otherwise than for the purpose of reconstruction or amalgamation), is unable to pay its debts or compounds with or convenes a meeting of its creditors or has a receiver or manager or an administrative receiver or an administrator appointed of its assets or ceases for any reason to carry on business or takes or suffers any similar action which in the opinion of the party giving notice means that the other may be unable to pay its debts;

16.1.3    Suffers a change of control.

16.2    Without prejudice to Videotel's other rights and remedies, Videotel shall have the right, upon providing 30 days' prior written notice to the Hirer, to terminate this Agreement for whatever reason, without being required to prove default on the part of the Hirer or satisfy any requirement of reasonableness or good faith.

16.3    Termination of this Agreement for whatever reason shall not affect the accrued rights of the parties arising in any way out of this Agreement as at the date of termination and in particular but without limitation the right to recover damages from the other.

16.4    Upon the termination of this Agreement for whatever reason the Hirer shall immediately cease to make any use of the Deliverables and will deliver up to Videotel any Deliverables in its possession or control.

16.5    Upon termination of this Agreement for whatever reason Videotel shall, at the request of the Hirer, use

its reasonable endeavors to deliver up to the Hirer one copy of any Input Material that, at the date of termination, is not in the possession of the Hirer but is held on the Server, in a format to be chosen by Videotel.

16.6    All provisions of this Agreement which in order to give effect to their meaning need to survive its termination shall remain in full force and effect thereafter.

17    **Assignment**

17.1    The Hirer shall not assign, transfer, sub-contract or in any other manner make over to any third party the benefit and/or burden of this Agreement without the prior written consent of Videotel.

17.2    In the event of an assignment this Agreement shall be binding upon such successor or assignee and the name of a party appearing herein shall be deemed to include the names of any such successor or assignee.

18    **Entire Agreement and Amendment**

18.1    This Agreement constitutes the entire agreement and understanding of the parties and supersedes all prior oral or written agreements, understandings or arrangements between them relating to the subject matter of this Agreement. Neither party shall be entitled to rely on any agreement, understanding or arrangement that is not expressly contained in this Agreement and no change may be made to it except in writing signed by duly authorised representatives of both parties.

18.2    No failure or delay on the part of either of the parties to exercise any right or remedy under this Agreement shall be construed or operate as a waiver thereof nor shall any single or partial exercise of any right or remedy preclude the further exercise of such right or remedy as the case may be. The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights or remedies provided by law.

19    **Notice**

19.1    Any notice or other document to be given under this Agreement shall be in writing and shall be deemed to have been duly given if left at or sent by hand or by registered post or by facsimile or other electronic media to a party at the address or facsimile number set out below for such party or such other address as such party may from time to time designate by written notice to the other.

19.2    Any such notice or other document shall be deemed to have been received by the addressee two working days following the date of dispatch if the notice or other document is sent by registered post, or simultaneously with the delivery or transmission if sent by hand or if given by telex, facsimile or other electronic means to the addresses shown in the particulars hereto which will be the addresses for service of proceedings for the parties.

20    **Governing law and jurisdiction**

20.1    The validity, construction and performance of this Agreement shall be governed by English law, and shall be subject to the exclusive jurisdiction of the High Court of Justice in England.

Bouchard Transportation Co., Inc.                    

# Vessels Owned or Managed by the Hirer

### For 20 Vessels and 2 Office Licences

## Vessels
(Hirer to Provide)

| # | Tugs | IMO # | E-MAIL ADDRESS |
|---|------|-------|----------------|
| 1. | BARBARA E. BOUCHARD | 9053141 | tugbarbara@bouchardfleet.com |
| 2. | BOUCHARD GIRLS | 8835102 | tuggirls@bouchardfleet.com |
| 3. | BRENDAN J. BOUCHARD | 9219501 | tugbrendan@bouchardfleet.com |
| 4. | BUSTER BOUCHARD | 7814591 | tugbuster@bouchardfleet.com |
| 5. | CAPT FRED BOUCHARD | 8115825 | tugcaptfred@bouchardfleet.com |
| 6. | DANIELLE M. BOUCHARD | 1053010 | tugdanielle@bouchardfleet.com |
| 7. | ELLEN S. BOUCHARD | 8117952 | tugellen@bouchardfleet.com |
| 8. | EVENING MIST | 7626243 | evebreeze@bouchardfleet.com |
| 9. | EVENING STAR | 9629768 | tugeveningstar@bouchardfleet.com |
| 10. | EVENING TIDE | 7435759 | tugtide@bouchardfleet.com |
| 11. | FREDERICK E. BOUCHARD | 7400479 | tugfrederick@bouchardfleet.com |
| 12. | JANE A. BOUCHARD | 9269702 | tugjane@bouchardfleet.com |
| 13. | J. GEORGE BETZ | 9137325 | tugjgbetz@bouchardfleet.com |
| 14. | LINDA LEE BOUCHARD | 9405394 | luglindalee@bouchardfleet.com |
| 15. | MARION  C. BOUCHARD | 7901978 | tugmarion@bouchardfleet.com |
| 16. | MORTON S. BOUCHARD, JR. | 7400481 | tugmortonjr@bouchardfleet.com |
| 17. | MORTON S. BOUCHARD IV | 9269740 | tugmorton4@bouchardfleet.com |
| 18. | RALPH E. BOUCHARD | 8809983 | tugralph@bouchardfleet.com |
| 19. | RHEA  I. BOUCHARD | 8117964 | tugrhea@bouchardfleet.com |
| 20. | ROBERT J. BOUCHARD | 9085821 | tugrobert@bouchardfleet.com |
| 21. | STATEN ISLAND OFFICE | Office | Lshelley@bouchardtransport.com |
| 22. | BOUCHARD OFFICE | Office | mbrady@bouchardtransport.com |